UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TIHUSMAR GIL COLMENAREZ,

                    Petitioner,

        v.

JULIO HERNANDEZ,

                    Respondent.

CASE NO. 2:26-cv-00845-GJL

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS

Petitioner Tihusmar Gil Colmenarez is currently detained by U.S. Immigration and

Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma,

Washington. Dkt. 1. Petitioner, through counsel, filed a Petition for writ of habeas corpus under

28 U.S.C. § 2241, seeking immediate release from custody and an order enjoining her future re-

detention without notice or hearing. Dkt. 1. The parties have consented to proceed in this matter

before a United States Magistrate Judge. Dkt. 5. The Petition has been fully briefed and is ripe

for consideration by the Court. Dkts. 1, 11, 14.

//

//

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 1

Having considered the parties' submissions, the balance of the record, and the governing law, the Court **GRANTS IN PART** the Petition, Dkt. 1, and **ORDERS** Petitioner's immediate release from custody and injunctive relief as outlined in the conclusion.

## I.    FACTUAL BACKGROUND

Petitioner, a native and citizen of Venezuela, entered the United States on December 19, 2023, and encountered U.S. Customs and Border Protection ("CBP") officers at the border in Eagle Pass, Texas. Dkt. 1 at 1; Dkt. 12 at ¶ 3. Petitioner alleges she told CBP officers she was fleeing Venezuela to seek asylum in the United States and that her son was very sick and suffering from kidney failure. Dkt. 2 at ¶¶ 3, 4, 7. However, Petitioner's Form I-213 from that date states she intended to enter the United States because her business in Venezuela was not profitable and that she denied having a credible fear of returning. Dkt. 13-1 at 4.

CBP officers determined Petitioner did not have valid documents to enter the United States and served her with a Notice to Appear charging her as inadmissible under § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"). Dkt. 13-2. The Notice to Appear directed her to appear before an immigration judge in Miami, Florida, on November 1, 2027. *Id.* CBP then released Petitioner on parole for a period of one year, until December 17, 2024. Dkt. 12 at ¶ 3; Dkt. 13-2; Dkt. 13-3 at 3.

Immediately after release, Petitioner took her son to the hospital in San Antonio, Texas, and he required dialysis treatment on the day he arrived. Dkt. 2 at ¶ 10. Petitioner spent approximately two weeks in the hospital with her son in San Antonio before she flew with her family to Miami, Florida. *Id.* at ¶¶ 11, 12. Her son immediately began kidney treatments at a local hospital. *Id.* While there, Petitioner was advised to take her son to Seattle Children's Hospital for treatment, so her family relocated to Washington in February 2024. *Id.* at ¶ 13. On

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 2

February 15, 2024, her son began urgent kidney care at Seattle Children's Hospital and was diagnosed with stage 5 kidney disease that required hemodialysis three times a week. *Id.* at ¶¶ 14, 15. In November 2024, Petitioner's son received a kidney transplant that requires weekly appointments and blood draws as well as daily medication management to prevent transplant rejection. *Id.* at ¶¶ 16–19; Dkt. 8. Petitioner's son is currently 13 years old, and Petitioner is primarily responsible for managing his medical needs. *Id.* at ¶ 21–23; Dkt. 8.

On December 12, 2025, ICE officers were conducting surveillance during a targeted enforcement operation in Tukwila, Washington, and observed a "female bearing strong likeness" to Petitioner's physical description leaving the area in a vehicle. Dkt. 11 at 1; Dkt. 13-3 at 3. ICE officers activated their emergency lights and initiated a vehicle stop. Dkt. 13-3 at 3. When Petitioner produced her driver's license, the officers re-detained Petitioner and transferred her to the NWIPC for continued detention pending her removal proceedings. *Id.* at 3–4.

In January 2026, Petitioner filed an application for asylum. Dkt. 2 at ¶ 50; Dkt. 12 at ¶ 5. An immigration judge ("IJ") held a hearing and pretermitted Petitioner's asylum application on February 12, 2026. Dkt. 2 at ¶ 51. The IJ ordered Petitioner removed to Ecuador. *Id.* On February 27, 2026, Petitioner filed an appeal of her removal order to the Board of Immigration Appeals. *Id.* at ¶ 52. To date, Petitioner remains in custody at NWIPC, and her appeal remains pending.

## II. PROCEDURAL BACKGROUND

Petitioner filed the instant Petition pursuant to 28 U.S.C. § 2241 on March 12, 2026. Dkt. 1. On March 23, 2026, Respondents filed a Return, Dkt. 11, and Petitioner filed a Traverse on March 26, 2026. Dkt. 14.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 3

The sole ground for habeas relief raised in the Petition is that Petitioner's re-detention without written notice and a pre-deprivation hearing was in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution. Dkt. 1 at 16; *see also* Dkt. 14. Respondents disagree, claiming that due process did not require a pre-detention hearing in Petitioner's case. Dkt. 11 at 5.

### III.   LEGAL STANDARDS

**A.   Habeas Petitions**

Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is in "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). To obtain habeas relief, habeas petitioners have the burden of demonstrating there is no lawful basis for their detention by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

**B.   Mandatory Detention Scheme**

8 U.S.C. § 1225 applies to "applicants for admission" to the United States, defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1). Applicants for admission face mandatory detention and may only be released on parole "for urgent humanitarian reasons or significant public benefit" pursuant to 8 U.S.C. § 1182(d)(5)(A). *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

This sole exception to mandatory detention, often referred to as humanitarian parole, may be granted "only on a case-by-case basis." 8 U.S.C. § 1182(d)(5)(A). The implementing

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 4

regulations include another requirement for humanitarian parole: the noncitizen must "present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). In other words, if a noncitizen has been granted humanitarian parole, it means that a DHS official with authority[1] decided that there were either "urgent humanitarian reasons" or "significant public benefit" justifying the parole of that individual, and that the individual did not pose a security or flight risk. *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(b).

Humanitarian parole may be terminated in two ways, each with their own procedural requirements. First, parole terminates automatically if the noncitizen departs from the United States or "at the expiration of the time for which parole was authorized." 8 C.F.R. § 212.5(e)(1). With automatic termination of parole, no written notice is required. *Id.* Second, if parole is not terminated automatically, either "the purpose for which parole was authorized" must have been accomplished or a DHS official with authority must decide that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States." 8 C.F.R. § 212.5(e)(2)(i); *see also* 8 U.S.C. § 1182(d)(5)(A) ("[W]hen the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the [noncitizen] shall forthwith return or be returned to the custody from which he was paroled[.]"). In such instances, the noncitizen must be provided written notice of the parole termination. 8 C.F.R. § 212.5(e)(2)(i).

Whether automatic or on notice, once a noncitizen's parole has been terminated, implementing regulations require that "any order of exclusion, deportation, or removal

---

[1] DHS officials authorized to make humanitarian parole decisions are "the Assistant Commissioner, Office of Field Operations; Director, Detention and Removal; directors of field operations; port directors; special agents in charge; deputy special agents in charge; associate special agents in charge; assistant special agents in charge; resident agents in charge; field office directors; deputy field office directors; chief patrol agents; district directors for services; and those other officials as may be designated in writing, subject to the parole and detention authority of the Secretary or his designees." 8 C.F.R. § 212.5(a).

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 5

previously entered *shall be executed*." 8 C.F.R. § 212.5(e)(2)(i) (emphasis added); *see also* 8 C.F.R. § 212.5(e)(1). "If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the [noncitizen] *shall again be released* on parole unless in the opinion of [a DHS official with authority] the public interest requires that the [noncitizen] be continued in custody." 8 C.F.R. § 212.5(e)(2)(i) (emphasis added). Stated differently, unless detention is required for the timely removal of a noncitizen, continued detention following release on parole must be supported by individualized assessment by an authorized DHS official. *Id.* Otherwise, implementing regulations require that a noncitizen be returned to humanitarian parole. *Id.*

Taken together, the applicable regulatory scheme requires that, where parole has automatically terminated upon expiration and the noncitizen is not returned to custody for either the timely execution of a removal order or upon an individualized decision by an authorized DHS official, continuation of humanitarian parole may be implied and, thereafter, the procedures for on-notice termination apply. *See, e.g.*, *Dieng v. Hermosillo*, No. 2:26-cv-00190-LK, 2026 WL 411857, at *6 (W.D. Wash. Feb. 13, 2026).

**C.    Due Process**

The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the federal government from depriving any person "of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. Due process protections extend to all individuals within U.S. borders, including noncitizens, regardless of their immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

Procedural due process demands meaningful notice and a genuine opportunity to be heard before the federal government infringes upon a liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Courts in the Ninth Circuit apply the *Mathews* balancing test in immigration

detention cases, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the Government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022); *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases).

## IV.    DISCUSSION

Petitioner contends that, under the *Mathews* framework, her re-detention without prior notice, individualized assessment, or the opportunity to be heard violated her procedural due process rights under the Fifth Amendment. Dkt. 1 at 16. Respondents maintain that Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(1) as an "arriving" noncitizen after the expiration of her parole. Dkt. 11.

Even assuming *arguendo* Respondents acted within their statutory authority to detain Petitioner upon expiration of her parole, statutory authority to detain does not obviate Respondents' obligation to comply with due process. *See Espinoza Palacios v. Hermosillo*, 2:26-cv-491-JNW, 2026 WL 686138, at *6 n.1 (W.D. Wash. Mar. 11, 2026) (collecting cases); *P.T. v. Hermosillo*, No. 25-cv-02249-KKE, 2025 WL 3294988, at *2 (W.D. Wash. Nov. 26, 2025) ("To the extent that the Government's briefing suggests that Section 1225(b) should be the beginning and end of the Court's inquiry, this position is emphatically rejected. In determining the lawfulness of Petitioner's detention, the Court will focus not on the Government's claimed authority to detain, but the process by which Petitioner was detained."); *see also Francois v. Wamsley*, 25-cv-02122-RSM-GJL, 2025 WL 3063251, at *3 (W.D. Wash. Nov. 3, 2025) ("Any argument that ICE acted within its [statutory] authority has no [e]ffect on a claim contending that detention violates Constitutional Due Process."). Thus, the Court must determine whether

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 7

Petitioner's re-detention without prior notice or hearing complied with due process. Analyzing the facts of this case under the three-part *Mathews* framework, the Court finds that it did not.

**A.      Petitioner Established Strong Liberty Interest While Paroled**

On the first *Mathews* factor, the Court examines the private liberty interest at stake. As the relevant interest here, "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (interests in not being detained are "the most elemental of liberty interests"); *see also Zadvydas*, 533 U.S. at 696 (a non-citizen has a liberty interest "strong enough" to challenge "indefinite and potentially permanent" immigration detention). This remains the case even when an individual is subject to conditions of parole or release. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. Mar. 3, 2025) ("The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty.") (citing, *e.g.*, *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (finding a parolee had an interest in his continued liberty)). While Respondents suggest Petitioner's liberty interest was conditional and did not extend after the expiration of her parole, this Court joins other courts in the Ninth Circuit in finding Petitioner's liberty interest in continued release did not expire along with her parole. *See Faqeri v. Scott*, No. 2:26-cv-00003-JHC, 2026 WL 194475, at *3 (W.D. Wash. Jan. 26, 2026) ("Just because Petitioner [as a noncitizen] may have a lesser liberty interest compared to others does not mean that Petitioner possesses no liberty interest in his continued freedom nor that his liberty interest was extinguished when his parole expired ….") (citations omitted); *see also Torres Ferrera v. Scott*, No. 2:26-cv-00583-TL, 2026 WL 776145, at *4 (W.D. Wash. Mar. 19, 2026) (collecting cases).

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 8

Here, the record demonstrates Petitioner's liberty interest in remaining free from physical confinement is substantial. Following her initial release from detention, Petitioner spent her time in the United States acquiring urgently necessary medical care for her son. *See* Dkt. 1 at 11–12; Dkt. 2. In reasonable reliance on her ongoing liberty interest, Petitioner has built a life in her community by obtaining continued medical care for her son in Seattle, enrolling her children in local schools, and establishing a home for her family. *Id.* Accordingly, the first *Mathews* factor weighs strongly in Petitioner's favor.

**B.      The Risk of Erroneous Deprivation of Liberty is High**

With respect to the second *Mathews* factor, Respondents re-detained Petitioner during a targeted enforcement action without advance notice, a statement of new facts suggesting danger or flight risk, or an opportunity to contest her re-detention before a neutral decisionmaker. Beyond citing the expiration of Petitioner's parole, Respondents have offered no individualized justification for Petitioner's re-detention.

As outlined in Section III. B. above, several procedural protections apply to humanitarian parole decisions in addition to the protection afforded by the Due Process Clause. Respondents appear to contend Petitioner was lawfully re-detained pursuant to the automatic termination of her parole, for which no notice is required. *See* Dkt. 11 at 3, 6; *see also* 8 C.F.R. § 212.5(e)(1). But Petitioner was not detained on or even near the expiration of her humanitarian parole. Petitioner's re-detention nearly one year after her parole expired implies that her humanitarian parole was extended beyond the initial expiration date and, thereafter, written notice was required. *See Caisa Telenchana v. Hermosillo*, No. 2:26-cv-00363-GJL, 2026 WL 696806, at *11 (W.D. Wash. Mar. 12, 2026) (citing *Dieng*, 2026 WL 411857, at *6 (inferring the same where noncitizen was not re-detained until long after their humanitarian parole expired)).

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 9

For noncitizens entitled to notice, termination of humanitarian parole requires the "accomplishment of the purpose for which parole was authorized" or for an authorized DHS official to decide that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States." 8 C.F.R. § 212.5(e)(2)(i). Respondents have offered no evidence demonstrating that the original purpose of the Petitioner's parole was accomplished or that a DHS official with authority determined her continued parole was no longer warranted for "humanitarian reasons" or for the "public benefit." 8 C.F.R. § 212.5(e)(2)(i). Nor is there any indication an individualized assessment of Petitioner's dangerousness or flight risk was performed prior to her re-detention. *Doe*, 787 F. Supp. 3d at 1094 ("[G]iven that Petitioner was previously found to not be a danger or risk of flight...the risk of erroneous deprivation remains high.").

As this Court has held previously, for those released on humanitarian parole:

> [D]ue process at least requires that (1) the government justify the basis for re-detention, as prescribed by the statute and its implementing regulations, and (2) [the noncitizen] be given the opportunity to be heard with respect to the government's basis for re-detention under the applicable statutory and regulatory framework at a meaningful time and in a meaningful manner.

*Caisa Telenchana*, 2026 WL 696806, at *12 (quoting *Dieng*, 2026 WL 411857, at *8 (internal citations and quotations omitted)). Those constitutional minimums were not afforded in this case.

Under these circumstances, the risk of erroneous deprivation is high, and a brief, neutral custody hearing would have significant value in testing the legal and factual basis for custody. *See Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137; *E.A. T.-B.*, 795 F. Supp. 3d at 1324. Accordingly, the second *Mathews* factor favors Petitioner.

//

//

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 10

**C.      The Government's Interest in Re-Detention Without Process is Minimal**

As for the third *Mathews* factor, the Court recognizes that there are strong governmental interests in the efficient administration of immigration laws, including those regarding detention of noncitizens. However, Respondents fail to identify any concrete reason why providing a short, pre-deprivation custody would materially impede those interests, particularly given Petitioner's prior release on parole. Custody hearings are already routine, and courts in this District have found the marginal administrative burden of such hearings to be modest and outweighed by the liberty interest at stake. *See E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1203 (W.D. Wash. 2025).

Moreover, Respondents are still required to follow their own regulations when pursuing governmental interests. *O.F.B. v. Maldonado*, No. 25-CV-6336 (HG), 2025 WL 3277677, at *7 (E.D.N.Y. Nov. 25, 2025) ("[T]he government's interest in efficient administration of the immigration laws at the border is not impermissibly burdened by affording the process laid out in 8 C.F.R. § 212.5 because it is required to follow its own regulations." (cleaned up)). As explained with respect to the second *Mathews* factor, that did not occur in this case. Accordingly, the third *Mathews* factor also favors the Petitioner.

Because all three *Mathews* factors weigh in Petitioner's favor, the Court finds that Respondents violated her procedural due process rights.

## V.      REMEDY

Having determined that Petitioner was re-detained without the constitutionally required process, the Court now determines the appropriate remedy for her unlawful confinement. "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and... the traditional function of the writ is to secure release from illegal custody." *Preiser v.*

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 11

*Rodriguez*, 411 U.S. 475, 484 (1973). "In modern habeas practice, courts often 'employ a conditional order of release,' which orders the government to release the petitioner unless it 'takes some remedial action' that corrects" the government's violation of the law. *Cardozo v. Bostock*, No. 2:25-cv-00871-TMC, 2025 WL 2592275, at *2 (W.D. Wash. Sept. 8, 2025) (quoting *Harvest v. Castro*, 531 F.3d 737, 741–42 (9th Cir. 2008)).

Courts in this District have ordered conditional release where, for example, the record showed that ICE officials performed some individualized assessment of flight risk, dangerousness, or noncompliance with release conditions before re-detaining a petitioner. *See, e.g., Singh v. Noem*, No. 2:26-cv-00246-BAT, 2026 WL 592265, at *3 (W.D. Wash. Mar. 3, 2026) (ordering conditional release where "Respondents claim to have detained Petitioner due to several violations of the OREC and Petitioner fails to rebut that asserted justification"); *Balwan v. Bondi*, No. 2:26-cv-00248-LK, 2026 WL 497098, at *5 (W.D. Wash. Feb. 23, 2026) (similar). Such circumstances are not present in this case. Given the constitutional defects underlying her re-detention without any meaningful individualized review performed, the Court concludes that an order of immediate release is the appropriate remedy for Petitioner's unlawful confinement.

In addition to immediate release, Petitioner asks that Respondents be prohibited from re-detaining her during the pendency of her removal proceedings without providing written notice and a hearing prior to re-detention at which Respondents would bear the burden of proving by clear and convincing evidence that she is a flight risk or a danger to the community, and that no alternatives to detention would mitigate those risks. *See* Dkt. 1 at 17.

The Court concurs that, consistent with the requirements of due process, Respondents must provide written notice and a hearing before a neutral decisionmaker in conjunction with future re-detention decisions while Petitioner's removal proceedings are pending. With respect to

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 12

the timing and evidentiary burden required, however, the Court declines to prescribe a particular procedural framework for all possible re-detention decisions Petitioner may face. Further, to the extent Petitioner requests that Respondents also be required to consider alternatives to detention at any re-detention hearing, she has failed to establish this additional procedural protection is constitutionally required. *See Martinez v. Clark*, 124 F.4th 775, 786 (9th Cir. 2024).

### VI.    CONCLUSION

For the foregoing reasons, the Court **ORDERS** the following:

(1)    Petitioner's habeas Petition, Dkt. 1, is **GRANTED IN PART**;

(2)    Respondents **SHALL release** Petitioner from custody **within 24 HOURS** under the conditions consistent with those in place at the time of her re-detention;

(3)    Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them **SHALL NOT re-detain** Petitioner unless an Immigration Court hearing is held (on adequate notice) to determine whether detention is appropriate, or until Petitioner is issued a final order of removal; and

(4)    Respondents **SHALL** file a certification within **48 HOURS** of the issuance of this Order, confirming that the Petitioner has been released from custody and providing the date and time of her release.

Finally, the Court will entertain post-judgment requests for attorney's fees, as requested in the Petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 27th day of March, 2026.

Grady J. Leupold
United States Magistrate Judge

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 13